**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3079-23

JOHN FREDLAW,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

Submitted October 22, 2025 – Decided November 19, 2025

Before Judges Paganelli and Vanek.

On appeal from the New Jersey Department of Corrections.

John Fredlaw, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Joseph D. Sams, Deputy Attorney General, on the brief).

PER CURIAM

John Fredlaw, a formerly incarcerated individual at Mid-State Correctional Facility (MSCF), appeals from a final agency decision (FAD) by the New Jersey Department of Corrections (DOC) finding him guilty of prohibited act *.203 under N.J.A.C. 10A:4-4.1(a)(6)(i). We affirm.

I.

On February 15, 2024, Fredlaw was charged with prohibited act *.203 which penalizes "possession or introduction of any prohibited substance, such as drugs, intoxicants, or related paraphernalia not prescribed for the inmate by the medical or dental staff." N.J.A.C. 10A:4-4.1(a)(6)(i). The charge was referred to a hearing officer. At the hearing, Fredlaw pleaded not guilty. After a counsel-substitute was appointed at his request, he declined the opportunity to call witnesses or to submit documents.

The hearing officer considered DOC Officer Sullivan's (Officer Sullivan) observations relative to the *.203 charge. Officer Sullivan reported that during a "linen compliance check" on the morning of February 15, 2024, he discovered a defaced, plastic peanut butter jar containing a "brown leafy substance inside the wall locker of cell 7E-16B[,] belonging to Fredlaw." He confiscated the container, photographed it, and placed it into the Special Investigation Department's evidence locker.

DOC medical personnel obtained a urine specimen and tested it for controlled dangerous substances (CDS). Fredlaw's urine specimen tested negative for CDS. Officer Sullivan then authored a disciplinary report and issued the *.203 charge to Fredlaw. Field test results showed the "brown leafy substance" tested positive for synthetic cannabinoids.

At his disciplinary hearing, Fredlaw testified the substance in the container was tea he had been drinking because he was sick. Fredlaw asserted a teabag broke and he emptied the tea leaves out of the bag and into the container so that he could continue drinking it to mitigate an ailment. Fredlaw's counsel substitute requested leniency and requested a second test to confirm whether the substance found in Fredlaw's cell wall locker contained synthetic cannabinoids.

The hearing officer found no evidence contradicting the DOC's proofs, other than Fredlaw's testimony. The hearing officer found the substance was in an altered peanut butter jar and stated tea at MSCF is "neither sold nor stored" in that manner. The hearing officer further reasoned Fredlaw's storage of the substance in the altered peanut butter jar appeared consistent with possession of CDS, which was confirmed by the field test result.

The hearing officer concluded Fredlaw committed prohibited act *.203 by possessing CDS and sanctioned him to sixty days in MSCF's restorative

3

housing unit, revoked his communication time for sixty days, and permanently rescinded his contact visitation privileges. Fredlaw agreed to participate in the DOC's Drug Diversion Program in lieu of some of the sanctions.

The same day, Fredlaw appealed the hearing officer's decision. He once again asserted the substance was loose tea leftover from a broken teabag and contested the DOC's decision to not conduct a second test on the substance. Fredlaw argued the hearing officer's finding was not predicated on substantial, credible evidence because the DOC failed to establish the field test's reliability and "[p]rison officials found no other evidence of drug possession." Fredlaw also asserted the failure to obtain a second, confirmatory test violated DOC policy and denied him due process.

On February 23, 2024, the Associate Administrator at MSCF upheld the hearing officer's finding in a FAD. The FAD found the DOC complied with its own procedure in handling the evidence, the evidence supporting the charge was sufficient, and the hearing officer's findings were neither arbitrary, capricious, nor unreasonable.

II.

Our limited standard of review of the FAD is well settled. In re Stallworth, 208 N.J. 182, 194 (2011). As we have long recognized, "[p]risons are dangerous places, and the courts must afford appropriate deference and

A-3079-23

flexibility to administrators trying to manage this volatile environment." Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238 (App. Div. 2019) (alteration in original) (quoting Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999)).

"A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Id. at 238-39 (quoting Stallworth, 208 N.J. at 194). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Stallworth, 208 N.J. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

Our review, however, is not "'perfunctory,' nor is 'our function . . . merely [to] rubberstamp an agency's decision.'" Blanchard, 461 N.J. Super. at 239 (alteration in original) (quoting Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010)). Instead, we "engage in a 'careful and principled consideration of the agency record and findings,'" and will "disturb [the DOC's] adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported 'by substantial[,] credible evidence in the record as a whole.'" Ibid. at 237-38 (first quoting Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000); and then quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

A-3079-23

In determining whether the FAD is arbitrary, capricious, or unreasonable, we consider: "(1) whether the [DOC]'s decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the[DOC] clearly erred in reaching its conclusion." Conley v. Dep't of Corr., 452 N.J. Super. 605, 613 (App. Div. 2018) (citing Stallworth, 208 N.J. at 194).

In the context of inmate discipline, N.J.A.C. 10A:4-9.15(a) requires a finding of guilt on a disciplinary charge to be based on "substantial evidence." We have defined substantial, credible evidence as "such evidence as a reasonable mind might accept as adequate to support a conclusion," or as "evidence furnishing a reasonable basis for the agency's action." Figueroa, 414 N.J. Super. at 192 (internal quotation marks omitted). The substantial evidence standard permits an agency to apply its expertise where the evidence supports more than one conclusion. Berta v. N.J. State Parole Bd., 473 N.J. Super. 284, 302 (App. Div. 2022).

## III.

On appeal, Fredlaw asserts the FAD should be reversed because the *.203 charge was not supported by substantial, credible evidence and that the disciplinary proceedings denied him due process.

6

Under our deferential standard of review, we discern no error in the FAD finding Fredlaw guilty of prohibited act *.203 because it is supported by substantial, credible evidence in the record and is not arbitrary, capricious, or unreasonable.

While Fredlaw's negative urine specimen is evidence he did not use the substance that tested positive for synthetic cannabinoids, the hearing officer found the leafy brown substance was secreted in a defaced peanut butter container inside Fredlaw's cell wall locker. The hearing officer did not find Fredlaw's testimony credible because MSCF does not provide loose tea and Fredlaw stored the substance in a manner consistent with hiding CDS. While the circumstantial evidence does not definitively prove the substance found in Fredlaw's possession was a synthetic cannabinoid, when coupled with the field test, there is a substantial, credible basis for the FAD predicated on the hearing officer's findings.

Fredlaw has not cited any statute or regulation requiring a second field test in order to sustain the *.203 charge against him. Furthermore, Fredlaw's reliance on our decision in Blanchard to support his argument is misplaced. In Blanchard, the DOC did not find any contraband in Blanchard's cell and failed to provide any factual basis supporting indicia of CDS possession, such as hiding the substance in an area less susceptible to discovery. 461 N.J. Super.

7

at 246-47. Blanchard's negative urine screen was also found to constitute circumstantial evidence that he did not possess narcotics. Id. at 247.

In Blanchard, the DOC's "exclusive reliance on the positive field test[]" and the absence of any other evidence of guilt" supported our conclusion that a second, confirmatory test was required to assure fundamental fairness. Ibid. Thus, Blanchard prohibits relying "exclusive[ly] . . . on [a] positive field test" absent "any other evidence of guilt." Ibid. The FAD here does not implicate the fundamental fairness concerns addressed in Blanchard because it is predicated on the field test results and corroborating, circumstantial evidence.

Fredlaw posits a generalized argument that the DOC deprived him of due process but does not articulate how the disciplinary hearing or the subsequent review process failed to comport with prevailing law. See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); N.J.A.C. 10A:4-9.1 to -9.28. Upon review, we discern no error with the procedure employed by the DOC in adjudicating the disciplinary charge.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3079-23